UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA CASTELLANOS, LUIS DUARTE, PEDRO GALLARDO, HELEN MUNOZ, RAUL RICO HERNANDEZ, ARIANA TORRES, and EDUARDO TORRES,<br><br>    Plaintiffs,<br><br>v.<br><br>PREMIUM OF JACKSON HEIGHTS, LLC, d/b/a FARINE BAKING COMPANY, MICHAEL MIGNANO, SABBIR AHMED, and BABU KHAN,<br><br>    Defendants. | Civil Action No. _____<br><br><br><br><br><br>COMPLAINT<br><br><u>JURY TRIAL DEMAND</u> |

Plaintiffs, Diana Castellanos, Luis Duarte, Pedro Gallardo, Helen Munoz, Raul Rico Hernandez, Ariana Torres, and Eduardo Torres (collectively, "Plaintiffs"), by and through their counsel, Trief & Olk, allege as follows:

## **INTRODUCTION**

1. Plaintiffs are employees or former employees of Defendant Premium of Jackson Heights, LLC, ("Premium"), which owns and operates Farine Baking Company ("Farine"), a restaurant/bakery in Jackson Heights, Queens. Premium is owned by Defendants Michael Mignano and Sabbir Ahmed, and is co-managed by Michael Mignano and Defendant Babu Khan (collectively "Defendants"). Plaintiffs have been employed as both front-of-the-house employees such as servers and bussers, and back of the house employees preparing the food in the kitchen, including pastry chefs and line cooks.

2. This action arises out of Defendants' failure to comply – in almost every way possible – with federal and state wage and hour laws. Defendants have failed to pay Plaintiffs at

least minimum wage for all hour worked, failed to pay overtime, failed to ensure that tipped employees receive the tips they are owed, and failed to keep proper records.

3. Any minimal compliance with wage and hour laws is rare and haphazard. Some employees are paid by check, others entirely in cash, and still others a combination of check and cash. Some employees work regularly scheduled hours, while most are expected to work beyond their scheduled shifts – with no additional pay. The paychecks that are issued misrepresent the hours worked and/or amount paid, creating a false impression of compliance with minimum wage and overtime laws.

4. Defendants' failures to pay proper wages and keep records constitute violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Such widespread violations stem from Defendants' willful disregard for the wage and hour laws that govern the terms of Plaintiffs' employment.

## PARTIES

5. Plaintiff Diana Castellanos ("Castellanos") is an adult individual and New York State resident who was employed by Defendants from September 2019 to December 2019.

6. Plaintiff Luis Duarte ("Duarte") is an adult individual and New York State resident who was employed by Defendants from October 2019 to November 2019.

7. Plaintiff Pedro Gallardo ("Gallardo") is an adult individual and New York State resident who was employed by Defendants from June 2019 to March 2020.

8. Plaintiff Helen Munoz ("Munoz") is an adult individual and New York State resident who was employed by Defendants from April 2019 to August 2019.

9. Plaintiff Raul Rico Hernandez ("Rico Hernandez") is an adult individual and New York State resident who has been employed by Defendants from February 2019 to the present.

10. Plaintiff Ariana Torres ("A. Torres") is an adult individual and New York State resident who was employed by Defendants from October 2019 to November 2019.

11. Plaintiff Eduardo Torres ("E. Torres") is an adult individual and New York State resident who was employed by Defendants from June 2019 to March 1, 2020.

12. Defendant Premium of Jackson Heights, LLC, is a limited liability corporation organized under the laws of the State of New York, with its principal place of business at 74-22 37th Avenue, Jackson Heights, New York, where it operates Farine, the bakery/restaurant where Plaintiffs have been employed.

13. Defendant Michael Mignano ("Mignano") is a member of Premium, and a co-manager of Farine.

14. Upon information and belief, Defendant Sabbir Ahmed ("Ahmed") is a member of Premium, and a co-manager of Farine.

15. Upon information and belief, Defendant Babu Khan ("Khan") is a co-manager of Farine.

## VENUE AND JURISDICTION

16. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

17. This Court has supplemental jurisdiction over Plaintiffs' New York Labor Law claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over Defendants because Defendant Premium is a New York-based corporation, which operates in the State of New York.

19. Venue is proper in this judicial district because, pursuant to 28 U.S.C. § 1391, Defendant Premium is a resident of this judicial district as an entity subject to the court's

personal jurisdiction with respect to the civil action in question and because the events or omissions giving rise to the claim occurred in this judicial district.

## COVERAGE UNDER THE FLSA AND NYLL

20. Throughout Plaintiffs' employment, Defendants have continuously been an employer of multiple (at least eleven) employees engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21. Throughout Plaintiffs' employment, Defendants were an enterprise covered by the FLSA and as defined by 29 U.S.C. §§ 203(r) and 203(s).

22. Throughout Plaintiffs' employment, upon information and belief, Defendant Premium had annual gross volume of sales made or business done of over $500,000 for each year in the relevant period.

23. Throughout Plaintiffs' employment, Defendants had multiple employees including Plaintiffs engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

24. Throughout Plaintiffs' employment, Defendants employed, and/or continues to employ, Plaintiffs within the meaning of the FLSA and the NYLL.

25. Throughout their employment, Plaintiffs were "employees" of Defendants as that term is used in 29 U.S.C. § 203(e)(1) and in the applicable regulations implementing the NYLL, 12 NYCRR § 142-2.14(a), and were employed in the "hospitality industry" as that term is used in 12 NYCRR § 146-3.1.

26. Throughout Plaintiffs' employment, upon information and belief, Defendants maintained control, oversight, and direction over the operation of Premium's operations at

4

Farine, including oversight of hiring and firing practices; setting hours and pay rates; oversight of the payroll; and other employment practices therein.

27. Upon information and belief, Defendant Mignano has had oversight of the day-to-day operations of Farine. As the chef, Mignano is on the premises daily, supervising the kitchen staff closely, and witnessing the hours Plaintiffs have worked. He has had the power to hire and fire employees such as Plaintiffs, control the conditions of employment, and determine the rate and method of compensation paid to Plaintiffs.

28. Upon information and belief, Defendant Khan has been a manager of Farine, performing oversight of its day-to-day operations and directly supervising Plaintiffs. He is present in the restaurant several times per week, has had the power to hire and fire employees such as Plaintiffs, control the conditions of employment, and determine the rate and method of compensation paid to Plaintiffs.

29. Upon information and belief, Defendant Ahmed actively participates in the day-to-day operations of Farine and has had the power to control the conditions of Plaintiffs' employment, including determining hours worked and rate and method of compensation paid to Plaintiffs.

30. Defendants Mignano, Ahmed, and Kahn are employers pursuant to the FLSA, 29 U.S.C. § 203(d), and the applicable implementing regulations, and NYLL § 2(6) and applicable implementing regulations, and are jointly and several liable with Defendant Premium.

## PLAINTIFFS' EMPLOYMENT HISTORIES

### Diana Castellanos

31. From September 2019 through December 2019, Castellanos was employed by Defendants as a pastry chef at Farine, working from 1:00 pm until 11:00 pm six days a week

during most weeks.

32. In total, in most weeks, Castellanos worked a total of 60 hours.

33. On some days, Castellanos began work at 7:00 a.m. and worked until 11:00 pm, working a total of 16 hours on those days.

34. Throughout her employment, Castellanos was paid $800 per week, $300 in cash, and $500 by check, with the required taxes withheld from the portion paid by check. For the standard weeks – *i.e.*, when Castellanos did not work the extra six-hour shift – she was paid the same amount, regardless of the number of hours worked.

35. For the days when Castellanos worked the extra six hours (arriving at 7:00 am), she was paid at an hourly rate of $13.00 per hour, all in cash, in addition to the $800 per week paid for the base 60 hours.

36. Throughout her employment, Castellanos was not paid an overtime premium for hours worked in excess of 40 in a workweek.

**Luis Duarte**

37. From October 2019 to November 2019, Duarte was employed by Defendants as a busser, and performed other duties, such as cleaning the restaurant and restrooms.

38. Duarte was scheduled to work for eight hours per day, five days per week, for a total of 40 hours, but actually worked approximately 12 to 14 hours per day, and sometimes on a sixth day as well.

39. Throughout his employment, Duarte was paid by the hour, initially at $8.00 per hour, then increased to $10.00 per hour.

40. Duarte was told that tips earned as a busser would be added to his hourly pay, but he did not receive all tips to which he was entitled, and in some weeks received no tips at all.

41. Throughout his employment, Duarte was not paid an overtime premium for hours worked in excess of 40 in a workweek.

**Pedro Gallardo**

42. From June 2019 to the March 2020, Gallardo was employed by Defendants as a cook at Farine.

43. Gallardo worked from 7:00 am to 5:00 pm, six days a week, and was rarely provided rest or meal breaks.

44. In total, Gallardo worked approximately 60 hours per week.

45. Throughout his employment, Gallardo was paid $700 per week in cash, equivalent to $11.66 per hour. Gallardo was paid the same amount regardless of the number of hours worked.

46. When Gallardo was hired, he was told that after six months he would receive a raise to a salary that would be equivalent to at least the $15.00 per hour minimum wage.

47. Gallardo did not receive the promised salary increase, but his workload was increased.

48. Gallardo asked Farine manager Danny Ventura for a raise and was told that Ventura would discuss it with Defendant Mignano. Gallardo never received a response to his request for a raise.

49. Throughout his employment, Gallardo was not paid an overtime premium for hours worked in excess of 40 in a workweek.

**Helen Munoz**

50. From April 2019 through August 2019, Munoz was employed by Defendants to assist with decorating pastry and preparing the pastry display at Farine.

7

51. Munoz was generally scheduled to work from 5:30 am until 2:00 pm, five days a week, 40 hours per week, and was rarely provided rest or meal breaks.

52. Munoz was frequently required to stay beyond the scheduled end of her shift, working 10 to 12 hours on those days.

53. In total, Munoz worked anywhere from 45 to 60 hours per week.

54. Throughout her employment, Munoz was paid $15.00 per hour. She was paid by check for 40 hours of work but in cash for any hours beyond 40, thereby concealing that she should have been paid at the overtime premium for these hours.

55. Throughout her employment, Munoz was not paid an overtime premium for hours worked in excess of 40 in a workweek.

**Raul Rico Hernandez**

56. From February 2019 through the present, Rico Hernandez has been employed by Defendants in the kitchen at Farine, performing various tasks, including preparing food, washing dishes, and performing maintenance work.

57. From February 2019 to mid-March 2020, Rico Hernandez worked from 7:00 am to 5:00 pm, six days a week, and was rarely provided rest or meal breaks.

58. In total, from February 2019 to mid-March 2020, Rico Hernandez worked approximately 60 hours per week.

59. From February 2019 to mid-March 2020, Rico Hernandez was paid $550 per week, in cash. He was paid the same amount regardless of the number of hours worked.

60. Throughout his employment, Rico Hernandez was not paid an overtime premium for hours worked in excess of 40 in a workweek.

61. From mid-March 2020 to the present, Rico Hernandez has worked seven hours

per day, three days a week, for a total of 21 hours per week.

62. Beginning in mid-March 2020 to the present, Rico Hernandez has been paid $9.00 per hour.

**Ariana Torres**

63. From October 2019 to November 2019, A. Torres was employed by Defendants as a server at Farine.

64. She worked three or four days a week, with the schedule varying depending on the day of the week.

65. On Fridays and Saturdays, she was generally scheduled to work from 2:00 pm until 11:00 pm, but was required to stay past the scheduled end of the shift to help clean the restaurant, ultimately working until 1:00 am.

66. A. Torres was required to perform clean-up work at the end of her shift, including cleaning restrooms and back-of-the house areas.

67. On several occasions, her supervisor clocked her out before she finished work, requiring her to finish her shift working off the clock.

68. Throughout her employment, A. Torres was paid $10.50 per hour.

69. A. Torres was told that she would receive tips, but cash tips were collected from all front-of the-house personnel, pooled among those staff members, and then re-allocated among the front-of-house staff, with no records showing how much each staff member had contributed to or earned from the pool.

70. Upon information and belief, A. Torres did not receive her share of the cash tips earned by front-of-the-house personnel that were contributed to the tip pool.

71. Additionally, A. Torres received no tips that had been paid by the guests via credit

card.

72. Throughout her employment, A. Torres was not paid an overtime premium for hours worked in excess of 40 in a workweek.

**Eduardo Torres**

73. From June 2019 through March 1, 2020, E. Torres was employed by Defendants as a line cook at Farine.

74. From June 2019 to mid-January 2020, E. Torres worked from 1:00 pm until 11:00 pm six days a week, and was rarely provided rest or meal breaks.

75. In total, from June 2019 to mid-January 2020, E. Torres worked approximately 60 hours per week.

76. Beginning on or about January 23, 2020, E. Torres's hours were reduced to 51 hours per week.

77. Throughout his employment, E. Torres was paid $725 per week, $365 in cash, and $360 by check, with the required taxes withheld from the portion paid by check. Torres was paid the same amount regardless of the number of hours worked.

78. Throughout his employment, Torres was not paid an overtime premium for hours worked in excess of 40 in a workweek.

79. Torres reported to Farine manager Danny Ventura that he was not being paid properly, to which Ventura responded that the work conditions and pay were simply "part of the job."

**DEFENDANTS' VIOLATIONS OF THE FLSA AND NEW YORK LABOR LAW**

80. Throughout their employment by Defendants, Plaintiffs were covered employees under the FLSA and New York Labor Law and were not exempt from the requirements

thereunder, including minimum wage and overtime requirements.

81. Throughout their employment by Defendants, Plaintiffs were not paid the wages to which they were entitled.

82. Throughout Plaintiffs' employment, Defendants were aware of Plaintiffs' hours worked and rates of pay but willfully failed to pay the compensation Plaintiffs were owed pursuant to the FLSA and NYLL.

**Minimum Wage Violations**

83. Throughout Plaintiffs' employment by Defendants, Defendants willfully failed to pay Plaintiffs at least the minimum wage for all hours worked as required under New York Labor Law, *i.e.*, $15.00 per hour for back-of-the-house employees who do not earn tips, and $10.00 per hour, the applicable rate of pay for tipped employees (such as Plaintiffs Duarte and A. Torres) of Farine. For some Plaintiffs, the hourly wage paid was less than that required under New York law; for some Plaintiffs, certain hours of work were not compensated at all.

84. Throughout their employment by Defendants, Defendants willfully failed to pay Plaintiffs Duarte, and A. Torres at the minimum wage of $15.00 per hour, and failed to ensure that the tips earned by Plaintiffs Duarte and A. Torres made up for the gap between the hourly rate paid and the required rate of $15.00 per hour.

85. Throughout her employment, Defendants willfully failed to pay Plaintiff Munoz for hours worked beyond 40 hours per week, resulting in several hours of unpaid work each week.

86. From February 2019 to mid-March 2020, Defendants willfully failed to pay Plaintiff Rico Hernandez on an hourly basis, instead paying him on a weekly basis, contrary to the requirements of New York law. Accordingly, under New York law, the weekly wage is

attributed to only the first 40 hours worked, resulting in Defendants' failure to pay Plaintiff Rico Hernandez for 10 to 20 hours per week.

87. Further, throughout his employment by Defendants, Defendants failed to pay Plaintiff Rico Hernandez at New York's minimum wage of $15.00 per hour. From February 2019 to mid-March 2020, Defendants willfully failed to pay Plaintiff Rico Hernandez a weekly salary equivalent to 40 hours paid at New York's minimum wage of $15.00 per hour. From mid-March 2020 to the present, when Plaintiff Rico Hernandez was paid an hourly rate, Defendants willfully failed to pay Plaintiff Rico Hernandez at the minimum wage for $15.00 per hour.

88. Throughout their employment, Defendants willfully failed to pay Plaintiffs Gallardo and E. Torres on an hourly basis, instead paying these Plaintiffs on a weekly basis, contrary to the requirements of New York law. Accordingly, under New York law, the weekly wage is attributed to only the first 40 hours worked, resulting in Defendants' failure to pay Plaintiffs Gallardo and E. Torres for 10 to 20 hours per week.

**Overtime Violations**

89. Throughout their employment by Defendants, Plaintiffs regularly worked in excess of forty hours in a week, averaging between 10 to 20 hours of overtime each week.

90. Because all Plaintiffs were non-exempt employees, they were entitled to overtime pay at one-and-one-half times their regular rate for any hours worked in excess of 40 hours per week.

91. Despite requiring Plaintiffs to work in excess of 40 hours per week, throughout Plaintiffs' employment by Defendant, Defendants willfully failed to pay Plaintiffs the overtime premium required for hours worked in excess of 40 hours in a given week.

**Spread of Hours Violations**

92. Throughout their employment by Defendants, Plaintiffs Castellanos, Duarte, Munoz, and A. Torres regularly worked in excess of 10 hours per day.

93. Defendants failed to pay these Plaintiffs the additional spread-of-hours pay for each shift extending beyond 10 hours, as required by New York Labor Law.

**Wage Notice and Wage Statement Violations**

94. At the commencement of Plaintiffs' employment, Defendants failed to provide Plaintiffs with statements of the scheduled hours and rate of pay as required by New York Labor Law.

95. Throughout Plaintiffs' employment, Defendants failed to furnish them with accurate, written wage statements listing, *inter alia*, rate or rates of pay and basis thereof; gross wages; net wages; regular hourly rate; overtime rate; number of regular hours worked; and the number of overtime hours worked, in violation of New York Labor Law.

96. Any wage statements that were provided were not accurate; and Plaintiffs Gallardo, Rico Hernandez, and A. Torres were paid entirely in cash, receiving no documentation at all regarding their terms of employment, hours worked, or pay earned.

97. The wage statements that were provided to E. Torres did not list any information at all where the number of hours and hourly rate should have been listed; no overtime pay was recorded; and the total pay shown was incorrect.

98. The wage statements that were provided to Castellanos, Duarte, and Munoz showed incorrect figures for the number of hours worked and/or the hourly rate; no overtime pay was recorded; and the total pay shown was incorrect.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO PAY OVERTIME IN VIOLATION
### OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. § 201, *et seq.*)

99. Plaintiffs reallege and incorporate paragraphs 1-98 as if fully set forth herein.

100. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs.

101. Plaintiffs worked in excess of 40 hours during all or some workweeks in the relevant period.

102. Defendants failed to pay Plaintiffs one-and-one-half times minimum wage for all work in excess of 40 hours per workweek.

103. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

104. Because Defendants' conduct was willful, a three-year statute of limitations applies, pursuant to 20 U.S.C. §§ 201, *et seq.*

105. Due to Defendants' FLSA violations, Plaintiffs were damaged and are entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and expenses of this action, pursuant to 29 U.S.C. § 216(b).

### COUNT II
### FAILURE TO PAY MINIMUM WAGE AND
### FOR ALL HOURS WORK IN VIOLATION OF NYLL
### (NYLL §§ 191 and 650 *et seq.*; and 12 NYCRR § 146-1.2)

106. Plaintiffs reallege and incorporate paragraphs 1-98 as if fully set forth herein.

107. Plaintiffs Castellanos, Gallardo, Rico Hernandez, and E. Torres are non-exempt

hospitality industry employees, pursuant to NYLL § 651 and 12 NYCRR § 146-3.2, and as such, Defendants are required to pay them hourly rates of pay, pursuant to 12 NYCRR § 146-2.5.

108. As non-exempt hospitality industry employees, Plaintiffs Castellanos, Gallardo, Rico Hernandez, and E. Torres were entitled to be paid hourly at a rate of at least the minimum wage, as set forth under NYLL § 652 and 12 NYCRR § 146-1.2, but instead were paid at a weekly rate.

109. In paying Plaintiffs Castellanos, Gallardo, Rico Hernandez (for the period from February 2019 to mid-March 2020), and E. Torres weekly rates, Defendants obscured the fact that they failed to pay these Plaintiffs at least the minimum wage for all hours worked.

110. Plaintiffs Duarte, Munoz, A. Torres, and Rico Hernandez (for the period from mid-March 2020 to the present), were paid at hourly rates that were less than the minimum wage for all hours worked.

111. Throughout Plaintiffs' employment with Defendants, Defendants willfully failed to pay Plaintiffs at least minimum wage for all hours worked as required by NYLL §§ 191 and 652, and 12 NYCRR § 146-1.2.

112. Due to Defendants' NYLL violations, Plaintiffs were damaged and are entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to NYLL § 198.

<u>**COUNT III**</u>
**FAILURE TO PAY OVERTIME IN VIOLATION OF NYLL**
**(NYLL §§ 198 and 650, *et seq.*, and 12 NYCRR § 146-1.4)**

113. Plaintiffs reallege and incorporate paragraphs 1-98 as if fully set forth herein.

114. As non-exempt hospitality industry employees, Plaintiffs were entitled to be paid an overtime premium at one-and-one-half times their regular hourly rate for all hours worked in

15

excess of 40 hours per workweek, as set forth under NYLL § 652 and 12 NYCRR § 146-1.4.

115. Throughout Plaintiffs' employment with Defendants, Defendants willfully failed to pay Plaintiffs at the overtime rate for hours worked in excess of 40 hours per workweek as required by NYLL and 12 NYCRR § 146-1.4.

116. Due to Defendants' NYLL violations, Plaintiffs were damaged and are entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to, pursuant to NYLL § 198.

**COUNT IV**
**UNLAWFUL RETENTION OF GRATUITIES**
**(On Behalf of Plaintiffs Duarte and Ariana Torres)**
**(NYLL §§ 196-d, 650, *et seq.* and 12 NYCRR § 146-1.3)**

117. Plaintiffs Duarte and A. Torres reallege and incorporate paragraphs 1-98 as if fully set forth herein.

118. Defendants unlawfully retained some or all of the gratuities Plaintiffs Duarte and Ariana Torres received, in violation of NYLL §§ 196-d, 652(4), and 12 NYCRR § 146-1.3.

119. Throughout Plaintiffs' employment with Defendants, Defendants willfully failed to pay Plaintiffs Duarte and A. Torres some or all of the gratuities they received, and failed to provide statements of any allowances claimed for tip credits, in violation of NYLL §§ 196-d, 652(4), and 12 NYCRR §§ 146-1.3, 146.2.2.

120. Due to Defendants' NYLL violations, Plaintiffs Duarte and A. Torres were damaged and are entitled to recover from Defendants compensation for gratuities unlawfully withheld; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to, pursuant to NYLL § 198.

## COUNT V
### (FAILURE TO PAY SPREAD-OF-HOURS PREMIUMS IN VIOLATION OF NYLL)
### (On Behalf of Plaintiffs Castellanos, Duarte, Munoz, and A. Torres)
### (NYLL §§ 198 and 650 *et seq.*; and 12 NYCRR §§ 142-2.4, 2.18)

121. Plaintiffs reallege and incorporate paragraphs 1-98 as if fully set forth herein.

122. Throughout their employment with Defendants, Plaintiffs Castellanos, Duarte, Munoz, and A. Torres regularly worked shifts in excess of 10 hours, but Defendants willfully failed to pay these Plaintiffs spread-of-hours premiums for these shifts.

123. Plaintiffs Castellanos, Duarte, Munoz, and A. Torres were damages and are entitled to recover from Defendants their unpaid spread-of-hours premiums, an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to, pursuant to NYLL § 198.

## COUNT VI
### FAILURE TO FURNISH WAGE NOTICE IN VIOLATION OF NYLL
### (NYLL §§ 195(1), 198; and 12 NYCRR § 146-2.2)

124. Plaintiffs reallege and incorporate paragraphs 1-98 as if fully set forth herein.

125. At the commencement of their employment, Defendants failed to provide Plaintiffs with a written notice (in English for Castellanos, Munoz, and A. Torres, and in Spanish for Duarte, Gallardo, Rico Hernandez, and E. Torres, for whom Spanish is their primary language), of the applicable rate of pay, regular pay day, and such other information as required by the Wage Theft Prevention Act, NYLL § 195(1).

126. Due to Defendants' NYLL violations, Plaintiffs were damaged and are entitled to recover from Defendants damage as provided by NYLL § 198 for these wage statement violations, together with attorneys' fees and costs.

## COUNT VII
### FAILURE TO FURNISH WAGE STATEMENTS IN VIOLATION OF NYLL
### (NYLL §§ 195(3), 198, and 650 *et seq.*; and 12 NYCRR § 146-2.3)

127. Plaintiffs reallege and incorporate paragraphs 1- 98 as if fully set forth herein.

128. Throughout Plaintiffs' employment, Defendants failed to furnish Plaintiffs with accurate, written wage statements listing, *inter alia*, gross wages; net wages; overtime rate; number of regular hours worked; and the number of overtime hours worked, as required by the Wage Theft Prevention Act, NYLL § 195(3).

129. Due to Defendants' NYLL violations, Plaintiffs were damaged and are entitled to recover from Defendants damage as provided by NYLL § 198 for these wage statement violations, together with attorneys' fees and costs.

### JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the relief to which they are entitled and:

  A. On the first and third claim for relief, an award of overtime compensation for unpaid wages to Plaintiffs;

  B. On the second claim for relief, an award of compensation for unpaid minimum wages at the applicable New York minimum wage rate;

  C. On the fourth claim for relief, an award of compensation for unlawfully withheld gratuities;

  D. On the fifth claim for relief, an award of compensation for unpaid spread-

          of-hours premium;

E.    On the sixth and seventh claim for relief, an award of statutory damages as applicable pursuant to New York Labor Law to Plaintiffs;

F.    An award of liquidated damages to Plaintiffs;

G.    An award of prejudgment and post-judgment interest to Plaintiffs;

H.    An award of costs and expenses of this action together with reasonable attorneys' fees, costs, and expenses of litigation to Plaintiffs; and

I.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 7, 2020

**TRIEF & OLK**

By: _/s/ Shelly L. Friedland_
Shelly L. Friedland
150 East 58th Street
New York, NY 10155
Tel: (212) 486-6060
Fax: (212) 317-2946
sfriedland@triefandolk.com
*Attorneys for Plaintiffs*